In re FRANK.

(District Court, D. Oregon. March 5, 1901.)

EXTRADITION—EMBEZZLEMENT—PARTNERSHIP.

It being provided by a treaty under which extradition of a person on the charge of embezzlement is sought that the evidence of criminality must be shown according to the laws of the place where he is found, and the laws of Oregon not allowing one to be held for embezzlement where ownership of the property was in part in him, or he was a partner in the business from which the fund was derived, extradition will be denied, on testimony that he and others went "in together" in the business from which the money was derived, on an agreement that it should be carried on in the same name as before he was connected with it, and that he should have half the profits, though putting in no money, and though nothing was said about sharing losses, none being contemplated.

A. C. Emmons and Charles A. Carey, for petitioner.
Dan J. Malarkey and John M. Gearin, for defendant.

BELLINGER, District Judge. This is a proceeding on behalf of the province of British Columbia, brought under the treaty between the United States and Great Britain, for the extradition of one Eli Frank, charged with the crime of embezzlement, committed in Victoria, in said province. The treaty between the two countries under which this proceeding is brought provides that:

"The respective judges and other magistrates of the two governments shall have power, jurisdiction, and authority, upon complaint made under oath, to issue a warrant for the apprehension of the fugitive or person so charged, that he may be brought before such judges or other magistrates, respectively, to the end that the evidence of criminality may be heard and considered; and if, on such hearing, the evidence be deemed sufficient to sustain the charge, it shall be the duty of the examining judge or magistrate to certify the same to the proper executive authority, that a warrant may issue for the surrender of such fugitive."

Section 5270 of the Revised Statutes provides a proceeding in substantial conformity with the terms of the treaty under which this proceeding is brought.

The charge, in substance, is that Frank, the defendant, being an employé or agent of the firm of Lenz & Leiser, wholesale merchants doing business at Victoria, for the sale of goods of that firm at Dawson, on the Yukon river, converted to his own use certain moneys belonging to the firm, and aggregating about $10,000. The defendant, by his attorneys, questions the authority of the agent claiming to represent the provincial government to demand his extradition. He further contends that it does not appear that the alleged conversion was committed in the province of British Columbia, and finally that the moneys which the defendant is charged with having embezzled are partnership funds, in which he has an interest as partner. I am satisfied that the authority of the agent of the provincial government of British Columbia is sufficient to warrant the extradition of the defendant if the evidence, under the laws of this state, can be deemed sufficient to sustain the charge. There is room for question, under the facts, as to the jurisdiction in which the alleged conversion took place; but as to this I am of the opinion that the failure to turn over to the firm of Lenz & Leiser, at the city of Victoria, upon his return from Dawson, within a reasonable time, is sufficient to warrant an inference of conversion by the defendant of the funds in his keeping. The firm of Lenz & Leiser seems to have had considerable doubt upon this question, if not upon that of partnership, inasmuch as these proceedings were not instituted until a period of nearly six months had elapsed from the time when the defendant arrived in Victoria, during one month of which time the defendant, Frank, was in and about the city of Victoria, and in the place of business of Lenz & Leiser. It appears that during this time the defendant endeavored to have what the attorneys representing him in Victoria at the time call a "settlement" of the particular matters in question, and that he employed such attorneys to that end; that the firm, on its part, consulted attorneys, whose advice seems to have discouraged the criminal prosecution of the defendant. The material question to be considered is, are the facts in the case sufficient to sustain the charge made? The treaty provides that the evidence of criminality must be shown according to laws of the place where the fugitive so charged shall be found. It is conceded that in this state, upon the principle of the common law, the general rule is that the ownership of the property alleged to have been embezzled must not be in the accused, either in whole or in part, and that, if the defendant was a partner in the business from which the fund in question was derived, he cannot be held for embezzlement.

In view of the importance of the case, I feel warranted in entering upon a minute examination of the testimony received upon the hearing. Two witnesses testified in support of the charge. They were allowed to state facts, conclusions, and impressions in their own way. The first of these witnesses is S. G. Spence, who testified that he had been engaged for Lenz & Leiser, in the firm of S. G.

Spence & Co., doing business at Dawson in the sale of merchandise furnished by the firm of Lenz & Leiser; that in the early part of last year an arrangement was entered into between Lenz & Leiser, the witness, and the defendant, Frank. The witness explains what that arrangement was, as follows:

"Mr. Lenz spoke to me about going in with him [Frank], and he said, 'We will divide the profits with you.' I stated to Mr. Frank that the business last year was carried on under the name of Spence & Co., and that we would leave it the same as that, and he said, 'All right.' "

The witness testified that Frank left Victoria some time about the 1st of March, and went to Dawson. Spence left Victoria the 15th of March, and arrived in Dawson on the 15th of April, and opened store. Frank had left Dawson for Victoria, and consequently had passed Spence on the road. The store was opened on the 18th of May, and a large part of the goods disposed of before Frank arrived, which was on June 3d. Frank left again for Victoria on the 30th of June. Spence gave him $2,601 in currency and dust, proceeds of the sale of the merchandise of Spence & Co., which Spence says "he was to take to our house and turn it over, and the balance was to be forwarded to him, at White Horse"; that $7,908 in gold dust was forwarded to Frank, at White Horse, by the hand of a Mr. Hirschberg. He testified that this money was the property of Lenz & Leiser, to whom the goods from which the money was derived belonged. The witness further testified that when Spence & Co. got short of goods at Dawson they would buy goods from others, when they could turn them over and make some money by doing so.

It appears from the testimony of Mr. Lenz, of the firm of Lenz & Leiser, that the defendant, Frank, had been a successful dealer at Dawson, and had done business with his firm for a number of years; that the firm had supplied him with merchandise at different times for the Yukon trade, upon his credit, in large amounts, for which he made prompt payment. His credit was good, and the firm would not have hesitated to trust him with goods on his own account, and in fact did so just prior to the business arrangement out of which the difficulty which has resulted in this proceeding grew. During the year 1899 Lenz & Leiser established a business at Dawson under the name of Spence & Co. The members of this company were S. G. Spence, a Mr. Gutman, and Lenz & Leiser. Desiring to carry on business at Dawson during 1900 as they had done during the previous year, Lenz & Leiser invited Frank to participate in the business at the latter point. Lenz testifies that this was not a partnership. As to the interest Spence was to have in the business, the witness said: "We never discussed the matter very thoroughly. We intended to divide our share of profits with him." He further testifies that the firm of Lenz & Leiser paid the freight on the goods as far as Utalingua, and that he believes that Mr. Spence borrowed the balance of the money for the freight; that the goods were covered by insurance in the name of Lenz & Leiser. Mr. Lenz, when questioned with reference to the expenses of Frank, testifies that Frank could have drawn his expenses, but it does not appear that in the arrangement between the parties there was any provision for

such expenses; nor as to Spence was there anything with reference to salary. It appears from the testimony that Spence & Co. at Dawson used the proceeds of the sale of goods to buy other goods in the conduct of their business.

On the hearing the rule that, where compensation is to be paid on the basis of a sharing in the profits, there is no partnership, was contended for. The reason for such a rule is obvious. Where compensation is to be paid upon the basis of a sharing in the profits, no interest is acquired in such profits. Reference is had in such a case to the amount of profits merely as a standard by which to measure the compensation to be received. In all such cases, as suggested, there is no interest in the profits as such. The compensation that is to be paid is something distinct and apart therefrom. But if compensation is to be paid in profits a different rule obtains. In such case the party acquires an interest in the profits as such. It clearly appears that the defendant had an interest in the business of Spence & Co. at Dawson. It was not a case of compensation on a basis of profit sharing, but one of community of interest in the profits of the business; and it was, moreover, a case of partnership, although it is not material that the technical relation of a partnership be shown, so long as an interest is shown in the fund which is the subject of the alleged embezzlement. Lenz testifies that in the preceding year "there was another party in with us," and that during that year the firm of Spence & Co. consisted of Spence, Gutman, and Lenz & Leiser. When asked if Frank did not take Gutman's place in the business of Spence & Co., Lenz answers, "No; Gutman put money in the business;" the idea being that because Gutman put money in the business, and Frank did not do so, Frank did not, like Gutman, become a partner. What the arrangement with Gutman was, the witness preferred not to state, and did not state; nor is it material. The fact that Frank did not put money into the firm of Spence & Co., or that the arrangement under which he became connected with that firm differed from the arrangement under which Gutman entered it, signifies nothing more than a possible difference, not in the relation of the two individuals to the firm, but in their respective interests in it. Spence was, according to Lenz, a member of the old firm; and yet it does not appear that he put money in the business, or sustained any different relation to it than that of Frank during the following year. There is a recurrence throughout the testimony of both Spence and Lenz of the statement that Frank was not a partner in the business of Spence & Co., and that he was not liable for losses; but these statements do not purport to be anything more than the conclusions of the witnesses from the facts in the case. The agreement or arrangement with Frank was for one-half of the profits of the business of Spence & Co. That is admitted by the parties to the arrangement. Having that interest in the fund in his hands, he could not, under the laws of Oregon, be guilty of embezzling the fund. The time of the accounting is immaterial. His interest was not postponed to the end of the season. It was a present interest, that would continue until an accounting and settlement were had between the parties. The

question of losses makes no difference. It seems to be conceded that if Frank was to share in the losses of the business, as well as the profits, he would be a partner. But Lenz and Spence both give it as their opinion that if there had been loss it would have fallen on Lenz & Leiser. Frank's liability in case of loss must be determined, not from the conclusions of witnesses, but from the agreement or arrangement under which he engaged with Spence & Co., and this made no account of loss in business. In fact, the parties did not contemplate loss. Spence so testifies in effect, and in all that was said between the parties with reference to their "arrangement" the matter of possible losses was not mentioned. Now, it is elementary that, except in cases specially provided for by statute, an agreement to share profits, nothing being said about losses, amounts prima facie to an agreement to share losses also. 1 Lindl. Partn. 11. Here there was an agreement to share profits, nothing being said about losses, and this establishes prima facie a partnership. In all that Spence and Lenz testify to with reference to the understanding had with Frank, and the relation of both Spence and Frank to the firm of Spence & Co., there is a disposition manifested to argue away from the facts to conclusions of their own; and yet in some instances the effect of what is stated is an unconscious admission of the fact. Thus, for instance, Lenz, as to whose integrity I have not the least doubt (and the same thing may be said of the witness Spence), testified:

"Q. Did you directly or indirectly enter into any partnership agreement with Mr. Frank? A. None but what I have stated. Mr. Frank asked me how we would divide the profits, and I said I was willing, if he would push the thing, and attend to the business, and run everything with Spence, to allow him one-half the profits."

Consider also the testimony of Spence, who seems to have taken up the prosecution of the defendant, and to be its moving spirit:

"Mr. Lenz spoke to me about going in with him [Frank]. He said, 'We will divide the profits with you.' I stated to Mr. Frank that the business last year was carried on under the name of Spence & Co., and that we could leave it the same as that, and he said, 'All right.' "

When pressed by repeated questions to give the exact conversation between the parties which constituted the agreement or understanding had with Frank, Spence answered that he and Frank talked over the Dawson business,—how the trade was,—and Frank said he would make as much money on potatoes as he made the year before if he had not had an accident and lost a scow.

"Q. Now, when you say that it was arranged that he and you should go in together, just state what was said. A. Just to go in together for the season, and we will divide the profits. * * * I believe he [Lenz] was the man who wanted to make this arrangement to go in with Frank."

And so it is plain enough that the parties went "in together" for the season; that Lenz & Leiser and Spence arranged to go in with Frank; that Frank was to have half the profits; that losses were not mentioned nor considered. All these terms are those common to a joint venture, and to nothing else,—much less to a mere hiring. So, too, of the conduct of Spence in explaining the partnership name of the year before, and suggesting that they would leave it

as before,—conduct not likely to accompany a case of hiring, but such as might be expected in a case of joint venture. But, as already appears, the terms in which the arrangement with Frank are stated by the only witnesses who have testified concerning it establish beyond any question the fact that the defendant, Frank, had a community of interest with Lenz & Leiser and Spence in the business of Spence & Co. His relation to the business of that company entitled him, with Spence, to buy goods for the business of the company with the proceeds of sales already made; to have the custody of the funds of the company, notwithstanding the opinion of Spence to the contrary; and to retain these funds until an accounting was had and his interest ascertained and allowed. If the case was doubtful, I should hesitate to refuse the necessary certificate entitling the authorities of British Columbia to the requisition they apply for. In such a case some deference might properly be given to the opinion of the authorities of that province. But the case admits of no doubt, and it is, moreover, peculiar in the circumstance that the law of embezzlement differs essentially in British Columbia from what it is in Oregon. Mr. Martin, who appears for the province, and who is learned in its laws, testifies that in that jurisdiction a partner may be convicted of embezzling the funds of his firm; so that, upon the facts so far appearing, the defendant would be liable to a conviction in the foreign country, although not guilty under the laws of this state, by whose laws his criminality must be tested on extradition. If the law of the crime charged was the same in both jurisdictions, an erroneous interpretation against the defendant of the law here would be corrected on the trial in the foreign jurisdiction, but without this such an error becomes irretrievable. The application for a certificate under the extradition clause of the treaty with Great Britain is denied, and the prisoner is discharged from arrest.